In the Matter of DAVID SAMPSON, Petitioner, against ERNEST E. COLE, Commissioner of Education of the State of New York, Respondent.

Third Department, December 29, 1942.

*Jay Leo Rothschild* and *Walter S. Beck* for petitioner.

*John J. Bennett, Jr., Attorney-General (Dorothy U. Smith,* of counsel), for respondent.

SCHENCK, J. The Board of Regents determined petitioner committed gross negligence in the public practice of accountancy and suspended his license to practice as a certified accountant for a period of two years. Petitioner brings this proceeding for review under article 78 of the Civil Practice Act.

Petitioner contends that the evidence was insufficient to sustain the determination of the Regents. He also argues that there is jurisdictional defect in the proceedings for the reason that only two members of the Board of Regents participated in the hearings, though the presence of not less than three members is required by statute. Petitioner further contends that the

determination should be set aside on the additional grounds that the Regents' sub-committee failed to issue subpœnas for witnesses named by petitioner, and that the findings served upon petitioner were not the same as those actually made · by the Regents.

In brief, petitioner was charged with gross negligence in the issuance of a financial statement of a client with knowledge that the statement would be used to obtain credit from a specified firm. The statement in question represented that petitioner's audit of the books and records of Samseham, Inc. showed a net worth of $98,594.73, whereas the corporation's true condition was an excess of liabilities over assets. Relying upon the favorable statement, a concern known as Bachmann-Emmerich & Co. extended credit to Samseham, Inc. and as a direct result suffered severe financial loss, Samseham, Inc. soon being forced into bankruptcy.

Petitioner claims that he · was the innocent victim of fraud practiced upon him by his client in deliberately giving him false information and submitting false records and figures to him. He states that he believed the statement issued by him to be proper in all respects. The determination by the Regents, however, holds that petitioner could have ascertained the discrepancies involved if he had made proper and complete investigation commensurate with the work he was doing.

The Regents have found: (1) that 400,000 yards of material worth $50,000 reported to be at printers was actually not owned by petitioner's client at all; (2) that 9,579 dozen pieces of merchandise valued at $54,000 reported to be at various contractors was actually non-existent; (3) that $290,896.57 worth of merchandise set forth in the statement as being on consignment was actually owned by Samseham, Inc. and the value thereof constituted outstanding debits. In addition, various bills owing by Samseham, Inc. were not included in petitioner's statement, and other errors of that nature were noted. The Regents have held that the acceptance by petitioner of statements by his client resulting in the foregoing without verification or any sort of check-up amounted to gross negligence. For example, it was held that petitioner should have independently verified, to his own satisfaction, the fact that certain merchandise was at printers, that other items were at independent contractors, and that much of the stock on hand was on consignment. A great portion of the voluminous briefs filed deal with the merits in respect to this alleged "gross negligence." The merits, however, cannot be considered here. in view of an existent fundamental jurisdictional defect.

Respondent does not contest petitioner's contention that only two members comprised the Regents' sub-committee which participated in the hearings. It is merely argued that petitioner waived hearing by a three-member committee and consented to proceeding before two. In this connection, section 1498 of the Education Law (Cons. Laws, ch. 16) provides that article 57, which is controlling upon a matter such as presented here, "shall be administered subject to sections forty-five and fifty-one of this chapter." Section 45 provides: "Authority to take testimony and conduct hearings. The regents, any committee thereof, the commissioner of education and any assistant commissioner of education may take testimony or hear proofs relating to their official duties, or in any matter which they may lawfully investigate. Hearings by the regents pursuant to any of the provisions of this chapter may be given by or before not less than three members of the regents designated by the regents or by the chancellor of the university to hold such hearings but any decision or determination in such proceedings shall be made by the regents."

Section 51 provides, in part: " * * * Hearings by the regents under disciplinary proceedings pursuant to the provisions of this chapter relating to such professions may be given by or before not less than three members of the regents designated by the regents or by the chancellor of the university to hold such hearings but any decision or determination in such proceedings shall be made by the regents."

These sections clearly indicate the necessity of a three-member sub-committee. I believe, furthermore, that it is fundamental that a question of jurisdiction is involved here that is not subject to waiver by either party. It was held in *Matter of Newham* v. *Chile Exploration Co.* (232 N. Y. 37), at page 42, that " it is elementary that no agreement, waiver or stipulation could confer upon the State of New York or its courts or commissions, jurisdiction which it does not and cannot possess." To argue to the contrary in this connection would amount to arguing that this court could sit with two or three members present if the parties agreed. The composition and powers of the Regents, like the composition and powers of this court, are legislatively created. They are not subject to waiver by all or any parties. They simply do not exist except in accordance with the provisions of law creating them.

It, therefore, seems clear that the Regents acted without jurisdiction when they suspended petitioner after a hearing before a two-member sub-committee. The determination must,

accordingly, be vacated and the petitioner reinstated. No determination, however, can here be made upon the merits so that the vacation of the Regents' determination is without prejudice to a renewed investigation and determination after a hearing before a properly constituted sub-committee.

It would seem that, if another hearing is held, section 1495-c of the Education Law, requiring issuance of subpœnas at the request of petitioner, should be complied with by the Regents. In addition, he is, of course, entitled to be served with the correct findings. These two points, raised by petitioner, cannot be further considered here in view of this decision as to lack of jurisdiction.

The determination should be vacated accordingly.

HEFFERNAN, J. (dissenting). I dissent and vote to confirm the determination of the Board of Regents. After a careful consideration of this record I am satisfied that the petitioner was guilty of gross negligence. It is an affront to our intelligence to say that there must be some rule which it is claimed he violated. The rules of common honesty required him to make an honest audit.

On the question of jurisdiction to present his cause before two Regents instead of three I am satisfied that he waived his right in that respect. He certainly had the right to waive the presence of the full committee. His waiver could not infringe upon the rights of others nor could it be against public policy or morals (27 R. C. L., pp. 906, 907; 67 C. J., pp. 307, 308, § 8).

HILL, P. J., BLISS and FOSTER, JJ., concur with SCHENCK, J.; HEFFERNAN, J., dissents with memorandum.

Determination annulled on the law and facts with fifty dollars costs and disbursements and matter remitted.